UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

WESLEY ALEXANDER HOOKS,

                  **Plaintiff,**        21-cv-10771 (JGK)

        - against -           <u>MEMORANDUM OPINION</u>
                                       <u>AND ORDER</u>
CITY OF NEW YORK, ET AL.,

                  **Defendants.**
————————————————————————————————

**JOHN G. KOELTL, District Judge:**

    The <u>pro se</u> plaintiff, Wesley Alexander Hooks, brought this action against the City of New York (the "City"), the New York City Police Department ("NYPD"), the NYPD's 13th Precinct, NYPD Officer Tara A. Convery, the Legal Aid Society ("Legal Aid"), Stephen Edwards, Adam Neal, Jamie Niskanen-Singer, Kenmore & Associates LP ("Kenmore"), and Ralph Garcia, alleging various violations of his constitutional rights in connection with his February 16, 2020 arrest and related prosecution. The plaintiff filed an amended complaint (the "Complaint") against these defendants on January 25, 2022. <u>See</u> ECF No. 3.

    Niskanen-Singer, Legal Aid, Kenmore, Garcia, and the City have moved to dismiss the plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). The City also seeks the dismissal of the claims against Convery on the same grounds, and it has requested that this Court abstain from adjudicating the case under the <u>Colorado River</u> doctrine. <u>See</u>

<u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976). The plaintiff has cross-moved for the appointment of special counsel, and the plaintiff has moved separately for summary judgment on all of his claims.

<b>I.</b>

<b>A.</b>

The following facts are taken from the Complaint and are accepted as true for purposes of the motions to dismiss.[1]

The plaintiff alleges that on or about February 16, 2020, he walked into the NYPD's 13th Precinct to execute an order of protection against his ex-girlfriend, Chantal Myrick. See Compl. at 11.[2] The plaintiff allegedly showed one of the NYPD officers certain videos of his ex-girlfriend "extorting" him, "trying to [b]lackmail" him, and threatening him with violence, "but to no avail." <u>Id.</u> Instead, two NYPD desk officers informed him that they were aware of a pending bench warrant for his arrest. <u>Id.</u> The plaintiff alleges that NYPD officer Convery then "falsely arrested and kidnapped" him. <u>Id.</u> The Complaint indicates that after this alleged false arrest, the plaintiff was released on

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

[2] Because the Complaint is comprised of several documents with different page numbers that have been combined into a single submission, all citations to the Complaint refer to the ECF pagination, not to the typed or handwritten page numbers in the corners of certain pages.

his own recognizance and prosecuted in state court on charges related to his treatment of his ex-girlfriend Myrick. Id.; see also id. at 13 (referring to the plaintiff's alleged possession of exculpatory evidence concerning Myrick's allegations against him); id. at 16 (alleging that the District Attorney offered the plaintiff a lower sentence to "leav[e] [his] ex alone").

The plaintiff also alleges that at some point during the early months of the COVID-19 pandemic, Convery illegally entered and searched the plaintiff's apartment at 145 East 23rd Street, New York, New York, while the plaintiff was visiting his friend Horace Bradford in Jersey City, New Jersey. Id. at 12. Convery was accompanied by Garcia, an employee of the Kenmore property where the plaintiff resided.[3] Id. The plaintiff alleges that Convery and Garcia "searched[,] seized[,] and deleted evidence from [the plaintiff's] flash drives, [his] portable hard drives, and [his] laptops" without any warrant. Id. at 12-13. According to the plaintiff, the seized evidence would have "vind[i]cated [him] of all allege[d] wrongdoing" against Myrick. Id. at 13.

After the alleged search, the plaintiff approached Garcia and asked whether the NYPD had produced a warrant to enter his

---

[3] The Complaint itself does not allege that Kenmore owned the property at 145 East 23rd Street, New York, New York, but public records submitted with the motions to dismiss state that Kenmore was the owner of the building. See DeSantis Decl., Ex. C, ECF No. 46-3.

residence. See id. Garcia "denied that the [NYPD] ever [went]
into [the plaintiff's] apartment." Id. However, the plaintiff's
neighbor allegedly told the plaintiff that the NYPD had entered
the plaintiff's apartment at least twice, once in April 2020 and
again in May 2020. Id. at 13-14.

The Complaint suggests that at some time before mid-2021,
the plaintiff moved out of New York and into a residence with
Bradford in Jersey City. The plaintiff alleges that in July
2021, while he and Bradford were absent from the Jersey City
apartment, the NYPD illegally entered and searched the unit in
order to "destroy more evidence." See id. at 20.

The plaintiff also alleges that since the time of his false
arrest in February 2020, the NYPD has been "wiretapping all of
[his] cell phones" and blocking the plaintiff's communications
with his criminal-defense attorneys. Id. at 14. The plaintiff
adds that the NYPD has rewritten his text messages, redirected
his calls, and prevented him from accessing his voicemail, his
social media accounts, and the internet. See id. at 14-15, 27.
The NYPD allegedly "destroyed 22 cell phones" belonging to the
plaintiff, not including two cell phones "confi[s]cated" when
the plaintiff was "falsely arrested," and the NYPD allegedly
"clone[s]" any new cell phone that the plaintiff purchases in
order to "control" his means of communication. Id. at 14.

The Complaint also contains allegations concerning the conduct of Niskanen-Singer, Edwards, and Neal, three criminal-defense attorneys who were appointed to represent the plaintiff at various times in the state criminal proceedings against him. As relevant here, the plaintiff alleges that Niskanen-Singer, a court-appointed Legal Aid attorney, approached the plaintiff with a plea agreement even though the plaintiff had directed Niskanen-Singer "not to come to [him] with a plea offer." Id. at 16. The plaintiff claims that Niskanen-Singer therefore "waived [the plaintiff's] rights to a jury trial . . . without [his] consent." Id.

Neal eventually replaced Niskanen-Singer as the plaintiff's defense counsel, and Edwards later replaced Neal. See id. at 21, 23. The plaintiff's own allegations suggest that the plaintiff proceeded to trial on the charges against him, indicating that the alleged plea deal was never accepted. See, e.g., id. at 24 (noting that the judge handling the plaintiff's criminal case "set a trial date" for early 2022 while Edwards was serving as the plaintiff's defense counsel).

### B.

The plaintiff initiated this action against the defendants on December 16, 2021, see ECF No. 1, and he subsequently filed an amended complaint on January 25, 2022, see ECF No. 3. That amended complaint, which is the Complaint at issue here, details

the allegations set forth above and seeks money damages from the defendants for "violating [the plaintiff's] civil rights, [and] [his] constitutional rights." Compl. at 12, 26-27.

The plaintiff served many, but not all, of the defendants between late January and early February 2022. The plaintiff did not serve Legal Aid during that time, and his attempt to serve Convery failed. See ECF No. 9. Of the various defendants who were properly served, only Edwards filed an answer to the Complaint. See ECF No. 15.

In a Memorandum Opinion and Order dated March 22, 2022 ("March 2022 Order"), this Court dismissed the claims against the 13th Precinct and the NYPD because the New York City Charter provides that such "organizational subdivision[s] of the City" are not independently suable. ECF No. 18 at 1-2; see Jenkins v. City of New York, 478 F.3d 76, n.19 (2d Cir. 2007). The Court also noted that the plaintiff had "not yet served Tara Convery" in this action, and the Court "reminded the plaintiff" that the failure to effectuate timely service might result in dismissal of the claims against Convery "for failure to prosecute." ECF No. 18 at 3.[4]

---

[4] The Court's March 2022 Order also noted that Legal Aid was never served and that the plaintiff's attempted service on Kenmore was defective. See ECF No. 18, at 3. To date, neither defendant has been served properly. However, because Legal Aid and Kenmore have filed Rule 12(b)(6) motions to dismiss without raising defenses based on insufficient service of process, any

In the ensuing months, several defendants moved to dismiss the plaintiff's claims against them pursuant to Rule 12(b)(6). Legal Aid and Niskanen-Singer filed their motion on May 13, 2022, see ECF No. 29 ("Legal Aid Motion to Dismiss"), the City followed with a motion on June 16, 2022, see ECF No. 34 ("City Motion to Dismiss"), and Kenmore and Garcia brought their motion on July 15, 2022, see ECF No. 45 ("Kenmore Motion to Dismiss").

On July 19, 2022, the plaintiff submitted a series of papers reiterating his allegations against the defendants. See ECF Nos. 50-52. The plaintiff also alleged that the NYPD has been preventing him from "obtaining [his] own attorney," and he asked the Court to appoint a "Special Prosecutor" pursuant to a regulation identified as "18 CFR § 600.1." ECF No. 50 at 3. As relevant here, the Court construed these submissions as (1) the plaintiff's opposition to the Rule 12(b)(6) motions to dismiss, and (2) a cross-motion for the appointment of special counsel. See ECF No. 53.

---

objections to service have been waived. See Fed. R. Civ. P. 12(b)(5), 12(h); Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1095 (2d Cir. 1990) ("defense of insufficiency of service of process" is waived if not "promptly asserted by [Rule 12] motion or in the responsive pleading"). In addition, the March 2022 Order extended the time for the defendant Neal to answer the Complaint. See ECF No. 18 at 2. Neal's failure to answer or otherwise file a responsive pleading, notwithstanding repeated extensions of his time to do so, is addressed in a separate Order.

On August 29, 2022, before the defendants replied to the plaintiff's opposition to the motions to dismiss, the plaintiff filed a document titled "Motion for Summary Judgment." See ECF No. 60. However, that submission appeared to be missing many of the exhibits that the plaintiff intended to file to prove his claims, and the argument primarily focused on the plaintiff's objections to the defendants' requests for certain extensions of time. See id. at 1-2. Not long after that filing, the defendants submitted their replies in support of the motions to dismiss.[5] See ECF Nos. 62, 64. The plaintiff then brought another motion, this time asking the Court to decide his claims "based on . . . factual [d]iscovery" and various "[e]xhibits" appended to the submission. ECF No. 68, at 1. The Court construed that motion and the supporting exhibits as "a motion for summary judgment," and ordered the defendants to respond. ECF No. 69.

On September 27, 2022, the plaintiff filed a submission requesting that the Court "grant [his] motion under 18 CFR [§] 600.1" for the appointment of "Special Counsel."[6] ECF No. 72. In

---

[5] Kenmore and Garcia filed a reply, see ECF No. 62, and the City filed another, see ECF No. 64. Niskanen-Singer and Legal Aid did not reply to the plaintiff's opposition papers.

[6] Also on September 27, 2022, the plaintiff filed what appears to be a sur-reply to the Kenmore Motion to Dismiss. See ECF No. 71. "Plaintiffs do not have a right to file a sur-reply, . . . [and] [s]ur-replies filed without the court's permission are generally considered improper." Trombetta v. Novocin, No. 18-cv-993, 2021 WL 6052198, at *13 (S.D.N.Y. Dec. 21, 2021) (striking the pro se plaintiff's "un-authorized sur-reply" to a motion to dismiss).

8

early October, Legal Aid, Niskanen-Singer, and the City opposed that motion. See ECF Nos. 74, 75. The City's letter submission also asked this Court to stay consideration of the plaintiff's motion for summary judgment pending resolution of the various motions to dismiss or the completion of discovery. ECF No. 74 at 1-2. All the defendants who filed Rule 12(b)(6) motions joined in the City's request. See ECF No. 75, ¶ 6; ECF No. 76 at 7-8.[7]

## II.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the allegations

---

Because the plaintiff neither sought nor obtained this Court's permission to file the sur-reply, the Court does not consider that submission.

[7] Kenmore and Garcia's submission also contains rebuttal to the plaintiff's sur-reply (ECF No. 72), which Kenmore and Garcia describe as an "untimely opposition" to the Kenmore Motion to Dismiss. See ECF No. 76 at 4. The Court does not consider this rebuttal to the sur-reply because, for the reasons described in the preceding footnote, the sur-reply itself was improperly filed. Kenmore and Garcia did not make any arguments opposing the plaintiff's motion for special counsel.

On November 1, 2022, the plaintiff filed several documents containing arguments related to his motions for summary judgment and the appointment of special counsel. See ECF Nos. 78-81. Though these papers were filed four days after the plaintiff's reply deadline had passed, see ECF Nos. 69, 73, the Court construes ECF Nos. 78, 79, 80, and 81 as the plaintiff's reply papers in support of his motions for summary judgment and special counsel, and the Court considers the plaintiff's reply arguments even though the submission was untimely. See Minitti v. Speiser, Krause, Nolan & Granito, P.C., No. 04-cv-7976, 2006 WL 3740847, at *11 n.6 (S.D.N.Y. Dec. 19, 2006) (considering an untimely reply because the opposing party did not suffer "any prejudice as a result of the delay").

in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss, the Court may consider documents attached to or referenced in the complaint, documents that the plaintiff either possessed or knew about and relied on in bringing the lawsuit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). In particular, courts may take judicial

10

notice of court documents and other public records, "including arrest reports, criminal complaints, indictments, and criminal disposition data." Awelewa v. New York City, No. 11-cv-778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012); see also Hutchins v. Solomon, No. 16-cv-10029, 2018 WL 4757970, at * 7 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice, on a motion to dismiss under Rule 12(b)(6), of a certificate of criminal conviction); U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras, No. 98-cv-3099, 2001 WL 300735, at *9 n.7 (S.D.N.Y. Mar. 27, 2001) ("With respect to materials from the State Court Action, the Court may take judicial notice of the relevant pleadings, motion papers, orders, and judgments in the State Court Action without converting [the defendant's] motion [to dismiss] to one for summary judgment."). However, if a court takes judicial notice of such documents, it does so only to determine what statements the public records contained, not to establish the truth of the matters asserted therein. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

The Court must construe a pro se complaint "liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to

draw the most favorable inferences" that the complaint supports, the Court "cannot invent factual allegations that [the plaintiff] has not pled." Id.

### III.

Liberally construed, the plaintiff's complaint seeks relief for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983, which authorizes private actions against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State," deprives "any citizen of the United States or other person within the jurisdiction thereof . . . of any rights, privileges, or immunities secured by the Constitution." To state a claim under § 1983, a plaintiff must plausibly allege that (1) the plaintiff's constitutional or other federal rights were violated, and (2) the deprivation "was committed by a person acting under color of state law." Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004).

As relevant to the resolution of the defendants' motions to dismiss, the pro se amended complaint is best read to assert the following claims: (1) false arrest, in violation of the Fourth Amendment, against the City and Convery; (2) unlawful search and seizure, also in violation of the Fourth Amendment, against the City, Convery, Kenmore, and Garcia; and (3) deprivations of the rights to effective assistance of counsel and to a jury trial,

in violation of the Sixth Amendment, against Legal Aid and
Niskanen-Singer. Each motion to dismiss is addressed in turn.

### A.

In the City Motion to Dismiss, the City argues that the
§ 1983 claims against the City and Convery must be dismissed
pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), because those
claims threaten to impugn the validity of the plaintiff's state
criminal convictions. As an alternative basis for dismissing the
claims against the City itself, the City also argues that the
plaintiff has failed to allege facts sufficient to satisfy the
standard for municipal liability under § 1983 and Monell v.
Department of Social Services, 436 U.S. 658 (1978).

The Court need not reach the City's merits arguments with
respect to the claims against Convery because those claims are
subject to dismissal pursuant to Federal Rule of Civil Procedure
4(m). Rule 4(m) provides that "[i]f a defendant is not served
within 90 days after the complaint is filed, the court -- on
motion or on its own after notice to the plaintiff -- must
dismiss the action without prejudice," unless "the plaintiff
shows good cause" warranting an extension of time for service.
Fed. R. Civ. P. 4(m). Neither "neglect and inadvertence" nor
a "mistaken belief that service was proper" will suffice to
establish good cause for failure to serve. Jonas v. Citibank,
N.A., 414 F. Supp. 2d 411, 416 (S.D.N.Y. 2006). Moreover, a

plaintiff's "failure to seek an extension of time undermines the defense of good cause." Id.

In its March 2022 Order, this Court informed the plaintiff that he had "not yet served Tara Convery" and cautioned that "if the plaintiff does not serve Convery . . . within 90 days after the amended complaint was filed, the plaintiff's claims against [Convery] may be dismissed for failure to prosecute" pursuant to Rule 4(m). ECF No. 18, at 3. The same Order also provided the plaintiff with contact information for the Pro Se Intake Unit "should [the plaintiff] have any questions about service of process." Id. at 4. Seven months have elapsed since that Order was issued, and the docket gives no indication that the plaintiff has attempted proper service on Convery. Further, the plaintiff has not requested any extensions of time to serve. Under these circumstances, dismissal of the claims against Convery pursuant to Rule 4(m) is proper. See, e.g., Jonas, 414 F. Supp. 2d at 416 (finding that "long delay in service" warranted dismissal of pro se plaintiff's claims under Rule 4(m)); Point-Dujour v. U.S. Postal Serv., No. 02-cv-6840, 2003 WL 1745290, at *3 (S.D.N.Y. Mar. 31, 2003) (dismissing pro se complaint where plaintiff had "not made any effort to effect proper service, although he had ample notice and opportunity to do so"). Accordingly, the plaintiff's claims against Convery are dismissed without prejudice.

14

Turning to the claims against the City, it is well-settled that a claim for money damages is not cognizable under § 1983 if resolving that claim in the plaintiff's favor would necessarily impugn the validity of an existing criminal conviction. Heck, 512 U.S. at 483, 487. This rule is consistent with the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," and also with the "strong judicial policy against the creation of two conflicting resolutions" in the civil action and the "underlying criminal prosecution." Id. at 486, 484.

Accordingly, when a plaintiff brings a § 1983 claim for damages, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." Id. at 487. If not, then "the action should be allowed to proceed, in the absence of some other bar to the suit." Id. But if a favorable outcome for the plaintiff would threaten to "render a conviction or sentence invalid," then the plaintiff must establish that the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. Absent such a showing, "the complaint must be dismissed." Id. at 487. Disposing of a case "on Heck grounds, however, warrants only dismissal without

15

prejudice," because a plaintiff would be entitled to reassert his claims in the event that the plaintiff's conviction is invalidated or reversed.  Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999).

Here, public records submitted with the motions to dismiss state that on February 16, 2020, Convery arrested the plaintiff on a charge of Strangulation in the Second Degree, in violation of N.Y. Penal Law § 121.12, based on a June 9, 2019 incident involving the plaintiff's ex-girlfriend. See NYPD Arrest Report, ECF No. 35-1, at 1-3. The plaintiff was arraigned the next day. See Certificate of Disposition in People v. Hooks, No. CR-004214-20NY (N.Y.C. Crim. Ct. filed Feb. 17, 2020) ("Criminal Disposition Certificate"), ECF No. 35-3, at 1. Hooks was then prosecuted in the Criminal Court of the City of New York on misdemeanor charges of Criminal Obstruction of Breathing through the application of pressure to the neck or throat, in violation of N.Y. Penal Law § 121.11(a), and Criminal Mischief in the Fourth Degree based on intentional destruction of property, in violation of N.Y. Penal Law § 145.00. Id. Both charges arose from the same incident for which the plaintiff was arrested on February 16, 2020. See id. (listing same incident date and arrest date as arrest report); see also District Attorney's Charges, ECF No. 30-4 (describing the incident). The public records from the plaintiff's criminal case also state that the

16

plaintiff, after a jury trial, was convicted of both counts on April 4, 2022. See Criminal Disposition Certificate at 1; see also New York Unified Court System Criminal Appearance History ("Appearance History"), ECF No. 35-4, at 2. One month later, the trial court sentenced the plaintiff to conditional discharge for a year and mandated fee payments. See Criminal Disposition Certificate at 1; Appearance History at 2.

In his opposition papers, the plaintiff does not argue that his criminal convictions have been reversed, expunged, declared invalid, or called into question in a habeas corpus proceeding. Further, in the several months since his convictions, the plaintiff has not amended his Complaint to assert that the convictions were invalidated.[8] Thus, the relevant question here is whether the plaintiff's § 1983 claims against the City, if successful, "would necessarily imply the invalidity of his conviction[s]." Heck, 512 U.S. at 487.

Beginning with the false arrest claim, a plaintiff alleging false arrest "must show that he was arrested without probable

---

[8] To the contrary, the plaintiff appears to concede that he was convicted after trial, though he argues that the conviction was "illegal." See, e.g., ECF No. 50, at 1 (plaintiff stating that he was illegally convicted of a crime); see also ECF No. 68, at 1 (plaintiff stating that he would "not have been found guilty nor tried illegally" absent the defendants' misconduct). The plaintiff provides no factual support for his assertion that the state convictions were unlawful beyond the allegations already set forth in the Complaint.

cause," Bennett v. N.Y.C. Police Dep't Transit Dist. 1, No. 19-cv-403, 2019 WL 1595845, at *2 (S.D.N.Y. Apr. 12, 2019), and a valid conviction arising from the arrest constitutes "conclusive evidence" that such probable cause existed, Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (noting that probable cause is a "complete defense" to a false arrest claim); see also Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986) (a plaintiff bringing a false arrest claim "can under no circumstances recover if he was convicted of the offense for which he was arrested"). Here, public records indicate, and the plaintiff does not dispute, that (1) the alleged false arrest was the same February 16, 2020 arrest resulting in the plaintiff's criminal prosecution, and (2) the conduct underlying that arrest was the basis for the plaintiff's convictions. Thus, the plaintiff's success on his false arrest claims, which would require a showing that the NYPD lacked probable cause to arrest the plaintiff for the misconduct underpinning his convictions, would imply the invalidity of the convictions themselves. The false arrest claims against the City are accordingly barred under Heck. See, e.g., Magnotta v. Putnam Cnty. Sheriff, No. 13-cv-2752, 2014 WL 705281, at *4 (S.D.N.Y. Feb. 24, 2014) (collecting cases where defendants prevailed on motions to dismiss under Heck because the false arrest claims at issue "called into question" the plaintiffs' convictions).

With respect to the claims of unlawful search and seizure, Heck made clear that such claims, if successful, do not always imply the invalidity of existing criminal convictions. See 512 U.S. at 487 n.7. Rather, because of evidentiary doctrines "like independent source and inevitable discovery," a plaintiff might prevail on a claim of unreasonable search and seizure without in turn establishing that the conviction was unlawful. Id. Here, the plaintiff's allegations with respect to Convery's search of his New York apartment in early 2020 do threaten to impugn the integrity of his conviction, because he asserts that the search resulted in the seizure and destruction of exculpatory evidence concerning his treatment of Myrick. See Compl. at 13 (alleging that Convery "took evidence" that would have "clearly vind[i]cated [him] of all allege[d] wrongdoing" against his ex-girlfriend). Accordingly, Heck bars the plaintiff's unlawful-search claim to the extent it concerns those allegations.[9] See Heck, 512 U.S. at 479, 490 (affirming dismissal of § 1983 claim alleging that state actors "knowingly destroyed evidence which was exculpatory in nature and could have proved petitioner's innocence"); see also Amaker, 179 F.3d at 51 (holding that a

---

[9] For the same reasons, had Convery been properly served, Heck would nevertheless bar the plaintiff from proceeding against Convery on the false arrest claim and on the unlawful-search claim related to the early 2020 search of the plaintiff's New York apartment.

§ 1983 claim alleging the "withholding of exculpatory evidence" was barred under Heck because the claim would "indeed call into question the validity of [plaintiff's] conviction").

However, it is not clear that the plaintiff's allegations regarding the July 2021 search of his New Jersey apartment and the NYPD's surveillance of his devices, if proven true, would undermine the validity of the plaintiff's criminal convictions. The Complaint does not allege any facts related to the type of evidence seized or surveilled in those circumstances, and the City does not advance any arguments suggesting a link between the plaintiff's convictions and either the July 2021 search or the NYPD's alleged monitoring of the plaintiff's devices. Thus, a conclusion that Heck forecloses an unlawful-search claim based on these allegations would be premature.

In any event, all of the § 1983 claims against the City, including any unlawful-search claims not foreclosed by Heck, are subject to dismissal because the facts alleged in the Complaint do not satisfy the Monell requirements for municipal liability under § 1983. In Monell, the Supreme Court made clear that a municipality cannot be held liable under § 1983 "solely because it employs a tortfeasor." Monell, 436 U.S. at 691. Rather, Monell "require[s] a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury." Bd. of Cnty.

20

Comm'rs. Of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997). This requirement "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403-04; see Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991) (municipality can be liable for "unconstitutional acts" of "lower-echelon employee[s]" only if those acts "resulted from a municipal custom or policy").

While the plaintiff here alleges that Convery and other officers subjected him to several unconstitutional acts, nowhere does he assert that these violations occurred in accordance with a City policy or custom. Further, even liberally construed, the facts alleged in the Complaint do not permit an inference that such a policy or custom existed.[10] See Zahra v. Town of Southold,

_____

[10] The plaintiff does allege that Convery has committed "several" false arrests of "other men," Compl. at 18, but the Complaint is devoid of allegations suggesting that Convery's behavior was part of a pattern of conduct among NYPD officers, or that senior NYPD personnel were aware of but disregarded such conduct. In short, the plaintiff has not alleged any circumstances from which "a municipal policy may be inferred." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (explaining that "municipal inaction such as the persistent failure to discipline subordinates who violate persons' civil rights could give rise to an inference of an unlawful municipal policy"); see O'Neal v. City of New York, 196 F. Supp. 3d 421, 434-35 (S.D.N.Y. 2016) (dismissing § 1983 claims where "[t]here [were] insufficient allegations of a pattern of [constitutional] violations" and the complaint did not plausibly allege that "the City had notice of the constitutional violations" at issue). The Complaint is

48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."). Accordingly, the plaintiff's claims against the City must be dismissed.

Federal Rule of Civil Procedure 15(a)(2) instructs that courts should "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). With respect to pro se complaints in particular, the Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 965 (2d Cir. 1999). In light of the special solicitude afforded to pro se litigants, the plaintiff is entitled to an opportunity to amend his claims against the City and Convery. Any attempt to assert amended claims that are currently Heck-barred will have to await the invalidation or reversal of the plaintiff's state convictions, but the Court cannot rule out the possibility that such an invalidation or reversal will occur. See Amaker, 179

---

similarly deficient with respect to the plaintiff's allegations that NYPD officers surveilled his devices and conducted an unlawful search of his apartment in July 2021. Indeed, the Complaint provides no details whatsoever regarding the rank, position, identity, or number of officers involved in these alleged constitutional violations.

F.3d at 52. Thus, the claims against the City and Convery are dismissed without prejudice.

Finally, in its reply papers, the City argues that the Court should abstain from adjudicating this case under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), because the plaintiff is litigating "a parallel state court action" in the New York State Supreme Court, New York County. City Reply, ECF No. 64, at 3; see Hooks v. City of New York, Index No. 100090/2021 (N.Y. Sup. Ct. filed May 3, 2021). Under the Colorado River doctrine, a federal court may abstain from exercising jurisdiction over a federal case where certain "exceptional circumstances exist which justify dismissal in deference to a pending state court proceeding." All. of Am. Ins. v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988). This doctrine "is a prudential one," and the "mere fact of concurrent state and federal proceedings 'does not, without more, warrant staying the exercise of jurisdiction.'" Id. at 602 (quoting Colorado River, 424 U.S. at 816).

Preliminarily, this Court need not consider the City's Colorado River argument because it was "raised for the first time in a reply brief." United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003); see In re Platinum-Beechwood Litig., 469 F. Supp. 3d 105, 118 n.15 (S.D.N.Y. 2020). In any event, the City's argument concerning the application of Colorado River, which is

23

fundamentally a request that the Court refrain from exercising jurisdiction, is the proper subject of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, not a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Stahl York Ave. Co., LLC v. City of New York, No. 14-cv-7665, 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015) ("A motion to dismiss based on Colorado River is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure."), aff'd, 641 F. App'x 68 (2d Cir.), cert. denied, 137 S. Ct. 372 (2016). The Court denies the request for Colorado River abstention without prejudice to renewal of the request in the form of a Rule 12(b)(1) motion.

### B.

In the Legal Aid Motion to Dismiss, Legal Aid and Niskanen-Singer argue that they do not qualify as persons acting "under color of" state law within the meaning of § 1983, and that as a result, the plaintiff's claims against them must fail. See ECF No. 30, at 1, 4-5. Legal Aid and Niskanen-Singer also argue that the plaintiff's claims, if construed as legal malpractice claims rather than § 1983 claims, must be dismissed under New York law.

"[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel . . . do not act 'under color of state law' and therefore are not subject

24

to suit under 42 U.S.C. § 1983." Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997); Polk County v. Dodson, 454 U.S. 312, 325 (1981). This principle applies to the "attorneys associated with the Legal Aid Society." Koulkina v. City of New York, 559 F. Supp. 2d 300, 318 (S.D.N.Y. 2008); see, e.g., Caroselli v. Curci, 371 F. App'x 199, 201 (2d Cir. 2010) ("With respect to The New York State Legal Aid Society and [a Legal Aid attorney], neither is a state actor amenable to suit under § 1983."). Here, the plaintiff's claims against Niskanen-Singer and Legal Aid are based on his allegations that Niskanen-Singer, a court-appointed Legal Aid defense attorney, waived the plaintiff's right to a jury trial in the state-court criminal proceedings against him. See Compl. at 16-17. Those allegations concern actions that Niskanen-Singer took in the course of his representation of the plaintiff. Thus, Niskanen-Singer and Legal Aid cannot be held liable as state actors under § 1983, and the plaintiffs' constitutional claims against these defendants fail.

To the extent the plaintiff's allegations can be construed as asserting state-law malpractice claims as opposed to § 1983 claims, dismissal pursuant to Rule 12(b)(6) remains proper. In New York, a plaintiff seeking damages for legal malpractice must demonstrate "that the [plaintiff's] attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession[,] and that the attorney's

breach of this duty proximately caused [the] plaintiff to sustain actual and ascertainable damages." Dombrowski v. Bulson, 971 N.E.2d 338, 339-40 (N.Y. 2012).[11] Further, to prove legal malpractice in a criminal matter that resulted in conviction, the plaintiff "must have at least a colorable claim of actual innocence -- that the [plaintiff's] conviction would not have resulted absent the attorney's negligent representation." Id. at 340. And "[i]n order to open the door for even a colorable claim of innocence," malpractice plaintiffs "must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit." Britt v. Legal Aid Soc'y, 741 N.E.2d 109, 112 (N.Y. 2000).

The plaintiff's Complaint here could be read to assert that Niskanen-Singer, in the course of the state criminal proceedings against the plaintiff, negligently waived the plaintiff's right to a jury trial without his consent. See Compl. at 16. However, the Complaint also alleges that a state judge later "set a trial date" in the criminal case against the plaintiff, see id. at 24, rendering implausible the plaintiff's assertion that his jury-trial right was waived. In any event, the plaintiff does not

---

[11] The plaintiff does not dispute that New York law applies to any legal malpractice claim asserted here, and the parties' "implied consent . . . is sufficient to establish choice of law." Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

dispute that his state convictions remain intact. Thus, any claim that Legal Aid and Niskanen-Singer committed malpractice in the course of the plaintiff's criminal matter is foreclosed.

While leave to amend should be freely granted, a court may deny the plaintiff an opportunity to amend if "such leave would be futile." Acito v. IMCERA Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995). Here, amendment would be futile because Niskanen-Singer and Legal Aid are not susceptible to suit under § 1983. Further, because the plaintiff proceeded to trial on the state criminal charges against him, any claim that Niskanen-Singer and Legal Aid negligently waived his right to a jury trial will invariably fail. And, in any event, the plaintiff does not dispute that his state convictions remain. Accordingly, the plaintiff's claims against Legal Aid and Niskanen-Singer are dismissed with prejudice.

### C.

The only allegations in the plaintiff's Complaint that can reasonably be construed as pertaining to Kenmore and Garcia are those asserting Garcia's involvement in an NYPD search of the plaintiff's New York apartment, located in a Kenmore property. See Compl. at 12-1. In the Kenmore Motion to Dismiss, Kenmore and Garcia argue that the unlawful-search claim against them must be dismissed because (1) they are not state actors under

§ 1983, (2) they did not act in concert with any state actor, and (3) the plaintiff's claim is Heck-barred.

The plaintiff's Complaint never once alleges that either Kenmore or Garcia was a state actor at the time of the claimed search. To the contrary, Kenmore is a private corporation that owned the New York property where the plaintiff resided, and it appears that Garcia was a building employee. See DeSantis Decl., Ex. C & D, ECF Nos. 46-3, 46-4; Compl. at 12-13.

A private party cannot be held liable under § 1983 unless its "allegedly unconstitutional conduct" is "fairly attributable to the state." Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003). Thus, to state a claim against a private actor under § 1983, a plaintiff "must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Betts v. Shearman, 751 F.3d 78, 84 (2d Cir. 2014). In other words, the plaintiff must plausibly allege that "the private actor is a willful participant in joint activity with the State or its agents." Id.

A private party can willfully participate in joint activity with a state actor only if "the two share some common goal to violate the plaintiff's rights." Id. at 85. In particular, joint action typically requires a "plan, prearrangement, conspiracy, custom, or policy" shared by the private actor and the public officer. Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d

28

268, 272 (2d Cir. 1999). To survive a motion to dismiss, "[t]he pleadings must specifically present supporting operative facts tending to show agreement and concerted action between the private party and the state actors." Studifin v. N.Y.C. Police Dep't, 728 F. Supp. 990, 993 (S.D.N.Y. 1990). A mere "conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Ciambrello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002).

Here, the Complaint is devoid of any allegations suggesting that Kenmore and the NYPD acted in concert to conduct the search of the plaintiff's unit, or that Kenmore and the NYPD "share[d] a common, unconstitutional goal." Betts, 751 F.3d at 85. As to Garcia, all the Complaint alleges is that Garcia entered and searched the apartment "[a]longside" NYPD officer Convery, and then denied that the search had occurred. See Compl. at 12-13. Nowhere does the plaintiff allege facts indicating that Convery and Garcia shared a common desire to deprive the plaintiff of his constitutional rights, or that Garcia and Convery acted in accordance with some custom, agreement, or prearranged plan. Absent specific facts supporting a plausible inference that such an agreement or plan existed, the plaintiff fails to state a claim against Garcia under § 1983. See Studifin, 728 F. Supp. at 993 ("Even a pro se plaintiff must allege some factual basis to

substantiate his conclusion that defendants conspired together to deprive him of his constitutionally protected interests.").

In any event, for reasons similar to those set forth above with respect to certain claims against the City, Heck requires the dismissal of the unlawful-search claims here. Because the plaintiff alleges that the evidence seized during the search of his New York apartment was exculpatory, the plaintiff's success on the unlawful-search claims against Kenmore and Garcia would impugn the integrity of the plaintiff's criminal convictions. Thus, these claims are not cognizable under § 1983 so long as the plaintiff's convictions remain intact. See Heck, 512 U.S. at 483, 487; Amaker, 171 F.3d at 51.

Kenmore and Garcia ask this Court to dismiss the § 1983 claims against them with prejudice on grounds of futility. See Kenmore Motion to Dismiss at 12-13. However, if the plaintiff's convictions are invalidated and Heck is rendered inapplicable, the plaintiff may be able to cure the remaining deficiencies in his Complaint with additional allegations tending to show that Garcia or Kenmore acted in concert with the NYPD. Accordingly, denial of leave to amend is improper at this time. The claims against Kenmore and Garcia are dismissed without prejudice.

## IV.

The plaintiff moves for the appointment of special counsel in a series of submissions invoking "18 CFR § 600.1." See ECF

30

Nos. 50, 72. The plaintiff is presumably referring to 28 C.F.R. § 600.1, which provides that "[t]he Attorney General . . . will appoint a Special Counsel when he or she determines that criminal investigation of a person is warranted" and where other prerequisites set forth in the regulation are met. By its plain terms, this regulation applies only in criminal matters, not in civil actions like this one. Further, the authority to appoint special counsel pursuant to 28 C.F.R. § 600.1 and to determine that counsel's jurisdiction lies with the Attorney General, not with the courts. See 28 C.F.R. §§ 600.1, 600.3(b), 600.4(a)-(b). In short, the regulation supplies no basis for appointing counsel here.

Though the plaintiff cites only to 28 C.F.R. § 600.1, his motion is perhaps better construed as a motion for this Court to exercise its authority pursuant to 28 U.S.C. § 1915(e)(1), which empowers district courts to "request an attorney to represent any person unable to afford counsel" in a civil case. 28 U.S.C. § 1915(e)(1); see Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997). Before a court can grant an application for counsel under § 1915, "it must first ascertain whether the litigant is able to afford or otherwise obtain counsel." Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994). The court must then consider, before moving on to several other factors, whether the litigant's claim "seems likely to be of substance,"

31

which is "a requirement that must be taken seriously." Hodge v. Police Officers, 802 F.2d 58, 60-61 (2d Cir. 1986).

Though the plaintiff has not moved for in forma pauperis status and he appears to have paid an initial filing fee, see ECF No. 1, his financial ability to retain counsel for this matter remains unclear.[12] In any event, all three of the Rule 12(b)(6) motions filed in this case have been granted, either because the plaintiff's convictions barred the relevant claims under Heck, or because the defendants were not amenable to suit under § 1983, or because the plaintiff has not plausibly alleged certain facts. Accordingly, at this time, the plaintiff does not "appear[] to have some chance of success" on the merits of his claims, Hodge, 802 F.2d at 61, and appointing counsel pursuant to § 1915(e)(1) would be inappropriate.[13]

---

[12] The plaintiff does indicate that he has had trouble "obtaining [his] own attorney and . . . looking up cases on [his] own," though he attributes these difficulties to the NYPD's alleged interference with his electronic devices. ECF No. 50, at 3.

[13] With respect to the remaining defendants Neal and Edwards, neither of whom filed motions to dismiss, "the Court cannot determine at this point whether [the] claims [against them] . . . are likely to be of substance, as no motion practice and little, if any, discovery has yet taken place." Otter Products, LLC v. Cea, No. 22-cv-01378, 2022 WL 3372305, at *2 (S.D.N.Y. July 7, 2022) (denying § 1915(e)(1) application for counsel). Given the general policy in favor of "preserv[ing] the precious commodity of volunteer-lawyer time," as well as the "broad discretion" afforded to courts when determining whether to appoint counsel under § 1915, id. at *1, the Court declines to appoint counsel solely for the claims against the two remaining defendants.

However, because this Court's grant of the motions to dismiss does not end the litigation entirely, the plaintiff's request for counsel is denied without prejudice insofar as the application is made pursuant to § 1915(e)(1). The plaintiff is reminded that if he renews his request for counsel later in the proceedings, the plaintiff must make some showing that he is not financially able to afford an attorney in this matter. Terminate Control Corp., 28 F.3d at 1341.

**V.**

The plaintiff has also moved for summary judgment against the defendants. In light of this Court's determination that the plaintiff's claims against the City, Convery, Niskanen-Singer, Legal Aid, Kenmore, and Garcia must be dismissed, the motion for summary judgment is now moot as to those defendants. Thus, the motion for summary judgment is denied with prejudice to the extent it concerns the claims against Niskanen-Singer and Legal Aid, because those claims have been dismissed with prejudice. With respect to the City, Convery, Kenmore, and Garcia, the motion for summary judgment is denied without prejudice to renewal after the filing of a second amended complaint.

Because no timetable has been set for discovery concerning the claims against the remaining defendants Neal, who has yet to appear in this case, and Edwards, the Court denies without prejudice the motion for summary judgment insofar as it is

33

directed toward these two defendants. See Trebor Sportswear Co.,
Inc. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)
("The nonmoving party should not be railroaded into his offer of
proof in opposition to summary judgment. The nonmoving party
must have had the opportunity to discover information that is
essential to his opposition . . . ."); see also Hellstrom v.
U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000)
("Only in the rarest of cases may summary judgment be granted
against a [party] who has not been afforded the opportunity to
conduct discovery."). If the claims against Edwards and Neal
ultimately proceed through discovery, the plaintiff may renew
his motion for summary judgment after discovery.

## CONCLUSION

The Court has considered all of the arguments of the
parties. To the extent not specifically addressed above, the
remaining arguments are either moot or without merit. For the
foregoing reasons, the Legal Aid Motion to Dismiss (ECF No. 29)
is **granted** and the claims against Legal Aid and Niskanen-Singer
are **dismissed with prejudice.** The City Motion to Dismiss (ECF
No. 34) and the Kenmore Motion to Dismiss (ECF No. 45) are
**granted,** and the claims against the City, Convery, Garcia, and
Kenmore are **dismissed without prejudice.** The City's request for
Colorado River abstention is **denied without prejudice** to renewal
in the form of a motion to dismiss pursuant to Rule 12(b)(1).

34

The plaintiff's motion for appointment of special counsel (ECF Nos. 50, 72) is **denied with prejudice** to the extent that the plaintiff relies on 28 C.F.R. § 600.1, but is **denied without prejudice** to the extent that the plaintiff seeks appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). The plaintiff's motion for summary judgment (ECF Nos. 60, 68) is **denied with prejudice** to the extent that it is directed toward Legal Aid and Niskanen-Singer, but is **denied without prejudice** to renewal against the City, Convery, Kenmore, and Garcia in the event that the plaintiff files a second amended complaint against those defendants. With respect to Edwards and Neal, the motion for summary judgment is **denied without prejudice** pending the completion of discovery.

The Clerk is directed to close ECF Nos. 29, 34, 45, 50, 60, 68, and 72, and to mail a copy of this Memorandum Opinion and Order to the pro se plaintiff and to pro se defendants Edwards and Neal.

**SO ORDERED.**

**Dated:**     **New York, New York**
          **November 16, 2022**

                              _____
                                   John G. Koeltl
                              United States District Judge